## PAYNE & HARRISON *v.* EDWIN B. SCOTT, Tutor.

Where a suit is brought by a merchant on an account rendered against minors for supplies furnished, advances, &c., and a privilege claimed upon their crop, and it appears that he had dealt with the tutor in his *individual capacity*, and the account was made in his name, and no contract is shown to have been made with him as tutor on behalf of the minors—*Held :* That he can only recover so much as is shown to have enured to the benefit of the minors, and then only to the extent of their revenues.

Article 343 of the Civil Code, which provides that the expenses incurred in the support and education of minors, shall not exceed the amount of their revenues, without the authority of the court, on the advice of a family meeting, applies also to expenses incurred in the management and preservation of their estates.

APPEAL from the District Court of the Parish of St. Landry, *Martel*, J. *Swayze & Moore*, for plaintiffs and appellants. *John E. King*, for intervenor and appellee.

MERRICK, C. J. This suit is brought to recover the sum of $1498 20, and legal interest thereon from January 20th, 1856, with a privilege upon the crop in the ground, for goods, merchandize, necessary plantation and household supplies, and money alleged to have been furnished for the use and benefit of a plantation and slaves belonging to the minors, *Pannell, Henrietta* and *Fanny Scott*. These minors, are the issue of the first marriage of their tutor, *Edwin B. Scott*. *Scott* has a like number of children by his second marriage. He resides with his second wife and mother upon the plantation belonging to the children of the first marriage. These children have six negroes, which appear to be employed upon the plantation; and *Scott* also employs upon the same three others belonging to his mother. In 1855, he made thirty-five hogsheads of sugar, having given an equal quantity to get the thirty-five ground.

In 1856, (the period when this account was made,) the crop consisted of fifty acres of corn, and the like number of acres in cotton. The cotton, owing to neglect of cultivation, only produced 700 pounds in the seed, or about half a bale of ginned cotton; equal in value to twenty dollars.

The account sued on was made in the *individual name* of *Edwin B. Scott*. The first item therein bears the date of 21st of March, 1856, and is for a bill of $518 77, and the last is under the date of April 7th, 1856, and is for an acceptance of a draft for $335 92, including commissions, stated to be for carts and wagons. There is also another charge of $100 for a plantation wagon.

The items of the bill of 21st of March, (with the exception of 5 barrels of pork at $80, 5 sacks of salt at $5 75, and $217 21 for bagging, rope, twine and tar,) were for family supplies, such as coffee, rice, claret, &c. Other items of the account are for dry goods, clothing, furniture, and cash advanced.

PAYNE
*v.*
SCOTT.

The under-tutor intervened in this case in the District Court, for the protection of the minors, and judgment was rendered in favor of the plaintiff against *Scott* individually, but against the plaintiffs on their demand against the minors.

The plaintiffs appeal.

It has been shown that the credit was given to *Scott* individually, and not as tutor. The plaintiff cannot, therefore, recover in virtue of any contract; for none has been shown to have been made on behalf of the minors. *Messrs. Payne & Harrison* did not, at the time they gave the credit, give it on account of the revenues of the minors; for those gentlemen were not then probably aware of the minors existence.

If the plaintiffs can recover at all, it is in the form of the action known in the civil law as *de in rem verso,* that is, for so much as has actually turned to the advantage of the minors, and then (their being no permanent addition to their estate) only to the extent of the revenues. C. C. 1960, 2278, 343.

Only fifty acres of cotton were planted in 1856, and *Scott* could not reasonably have expected to make over fifty bales of cotton, and (as just said) actually made but half a bale, worth twenty dollars. But the minors are sought to be charged with rope and bagging sufficient for over one hundred bales, and at a cost of more than ten times the value of their whole crop, viz, $213 11. This bagging, 720 yards, and the rope, 1021 pounds, were evidently used in some other manner. So of the wagons; the minors are charged with $435 92 for carts and wagons, and the proof is, that the following year there were no wagons on the place, and only one pair of wheels.

The plaintiff has not only failed to show that the foregoing items enured to the benefit of the minors, but his allegation is rebutted by the evidence

The plaintiff has also failed in his proof in regard to the pork, salt and tar, which may have been disposed of by *Scott,* the purchaser, in the same manner as the wagons, carts, bagging and rope. At all events, the plaintiffs, in this sort of action, (where the goods were charged to one person, and the price is sought to be recovered of another,) cannot recover against the minors where the tutor himself would not be permitted to do so. The proof is insufficient in this case.

The plaintiffs deny that Article 343 of the Civil Code, which provides that the expenses for the support and education of the minor shall not exceed his revenues, applies to those which are necessary to preserve and render productive their property; and it is supposed that it is sufficient to show that the supplies furnished were such as the defendants might reasonably be supposed to need for their plantation.

It appears to us, that the spirit of Article 343 covers the expenses of the minor's estate, as well as his personal expenses. See *Moore* v. *Nichols,* 5 L. R. 488.

In *Barbarin* v. *Barbarin,* 3 An. 264, this court, in speaking of expenses incurred in the management of the estate and payment of debts, &c., said : " The advances made by the under-tutor, not having been authorized by a decree of court, rendered on the advice of a family meeting, he has no claim for them against the minors, beyond the revenues; and he cannot be permitted to enforce his claim against the defendant personally, until that of the minors is ascertained and paid."

In the case of *Hubbell* v. *Hubbell,* the tutrix expended more for the support and education of the minors than the revenues. The court remarks generally, that " our Code expressly provides that the expenses of a minor shall never exceed his

96

PAYNE
v.
SCOTT.

revenues, without the authority of the court, upon the advice of a family meeting." 5 An., p. 525.

In the case of *Urquhart* v. *E. B. Scott, Tutor*, 12 An. 674, the suit was for " a balance of account due plaintiffs for alleged advances made and supplies furnished to said *Scott, in his capacity aforesaid*, for the use and benefit of a plantation belonging to said minors," and it was alleged " that said advances and supplies were absolutely necessary for the proper administration of the property and the maintenance and education of said minors."

In reference to an action of this sort, we said :

" It is not shown that the estate was embarrassed with debts at the commencement of the tutor's administration, nor does it appear that the revenues of the minors were inadequate to their support. The tutor is prohibited, under the stringent but wise provisions of our law, from borrowing money on behalf of the minors. *If their support, or the preservation of their property require* an expenditure beyond these revenues, it is the duty of the tutor to cause to be convened a meeting of the family or friends of the minor to deliberate upon the propriety of making a loan. In the absence of such authority, the tutor can make no contract, binding as such, which creates an indebtedness on the part of his wards. *Those who deal with tutors acting on behalf of minors*, must do so at their peril."

It was after making these sweeping remarks, that the court used the language relied upon by plaintiffs' counsel. An examination of the case will show, that the court was reasoning in reference to the proceeds of the crop in the hands of *Messrs. W. & D. Urquhart*, and so far from countenancing the doctrine that a tutor can by his own acts diminish the capital of the minor, the court, by its decree, *rejected* the plaintiffs' demand. 12 An. 674.

The case of *Miltenberger* v. *Elam*, 11 An. 667, sustains the same view of the capacity of the tutor and rights of the minors.

It is true, that Article No. 339 of the Civil Code allows the property of the minor to be alienated without the advice of a family meeting when a judgment is to be executed against him. But this Article presupposes that the judgment was obtained upon a just cause and in conformity to law. See examples, 7 L. R. 316, 8 L. R. 321.

There is the greater necessity for a careful examination of the demand against the minor, on account of the effect of the execution of the judgment against him.

We are, therefore, of the opinion, that the judgment of the lower court ought to be affirmed, and it is so decreed.