amended complaint (Dkt. No. 97) is **DE-NIED.**

**THIS CASE IS TERMINATED. IT IS SO ORDERED.**

**ED SCHMIDT PONTIAC–GMC TRUCK, INC., Plaintiff,**

v.

**DAIMLERCHRYSLER MOTORS COMPANY, LLC, Defendant.**

Case No. 3:04CV07621.

United States District Court,
N.D. Ohio,
Western Division.

March 11, 2008.

Beth A. Wilson, Gerald R. Kowalski, Janelle M. Schaller, Janis E. Foley, Cooper & Walinski, Toledo, OH, for Plaintiff.

Jay F. McKirahan, Whann & Associates, Dublin, OH, for Plaintiff/Intervenor.

Beth A. Wilson, Cooper & Walinski, Toledo, OH, Janine T. Avila, Reginald S. Jackson, Jr., Connelly, Jackson & Collier, Mark T. Clouatre, Mark F. Kennedy, Steven M. Kelso, Wheeler Trigg Kennedy, Denver, CO, for Defendant.

David A. Katz, U.S. District Court, Toledo, OH, for Mediator.

ORDER

JAMES G. CARR, Chief Judge.

This is a contract case between an automobile dealer and a manufacturer in which the dealer, Ed Schmidt Pontiac–GMC

Truck, Inc., claims that the defendant DaimlerChrysler breached a 1994 settlement agreement. Schmidt seeks leave to amend to add a claim for spoliation of evidence. [Doc. 122]. Jurisdiction arises under 28 U.S.C. § 1332.

For the reasons that follow, the motion will be granted.

### Background

Schmidt is as a "dualed" dealership, in that it sells both General Motors vehicles and Jeeps produced by DaimlerChrysler. Schmidt obtained the Jeep franchise in 1993 through purchase of Southwyck Jeep, which had operated in south Toledo. Schmidt could not complete the purchase without DaimlerChrysler's approval, which the corporation provided in 1993.

In 1994, Schmidt sought to consolidate the Southwyck Jeep outlet with its main facility in Perrysburg, Ohio. Another Toledo-area Jeep dealer, Yark Oldsmobile–Jeep [Yark], protested such relocation under O.R.C. § 4517.50(A).[1] Yark anticipated that, as a result of implementation of that reorganization, Schmidt might obtain a Chrysler franchise. Were that to occur, Yark, a dualed dealer selling Oldsmobiles as well as Jeeps, would suffer a competitive disadvantage with regard to Schmidt.

Additionally, if Schmidt were to obtain a Chrysler franchise, it would be able to pursue a § 4517.50(A) protest against a subsequent grant by DaimlerChrysler of a Chrysler franchise to Yark, as that franchise would be within Schmidt's ten-mile zone of protection under that section.

Yark had informed DaimlerChrysler in December, 1993, that it might be interested in purchasing Valiton Chrysler–Plymouth [Valiton], located about three miles from Yark's premises. Yark would have needed DaimlerChrysler's approval to complete the purchase, just as Schmidt required DaimlerChrysler's permission to purchase Southwyck Jeep.

In filing its § 4517.50(A) protest, Yark's long-term goal was to ensure that, if DaimlerChrysler gave Schmidt a Chrysler franchise, DaimlerChrysler also would approve Yark's acquisition and relocation of Valiton Chrysler. Yark also wanted to avoid a protest by Schmidt of the relocation of the Valiton Chrysler franchise.

Were all that to occur, both Yark and Schmidt would be selling Chryslers, Jeeps, and GM vehicles. Thus, neither Yark nor Schmidt would have the competitive advantage that results from offering more vehicle lines than the other. Yark's protest ultimately laid the groundwork for a three-way understanding about the process by which Yark and Schmidt would obtain Chrysler franchises in the future. The parties agreed that Yark would dismiss its protests, Schmidt would move its Jeep operation to Perrysburg, and DaimlerChrylser would not award Chrysler franchises to either Schmidt or Yark until it could award one to both.

Approximately nine years later, Yark finally purchased Valiton. On learning that Yark was doing so, Schmidt, anticipating that DaimlerChrysler would approve both the sale of Valiton to Yark and Valiton's relocation, demanded that DaimlerChrysler grant Schmidt a Chrysler franchise pursuant to the 1994 Settlement Agreement.

DaimlerChrysler replied that the Agreement did not apply to this situation because DaimlerChrysler was not "award-

---

1. O.R.C. § 4517.50(A) provides that when a franchiser establishes a new franchise (selling new motor vehicles) or relocates an existing one in a given market, the franchiser must give written notice of its intent to the local motor vehicle dealers board and to the franchisees selling the same "line-make" in that market. The franchisees then have a short time to file a protest to the relocation or new establishment with the board.

ing" a Chrysler franchise to Yark. Yark was merely acquiring an existing franchise. Acquisition of a franchise in that manner, DaimlerChrysler asserted, was not the same as an "award," as used in the 1994 Settlement Agreement. Disagreeing with this interpretation, Schmidt filed this lawsuit.

During two years of discovery, Schmidt alleges that DaimlerChrysler has knowingly and intentionally destroyed relevant evidence. Specifically, Schmidt alleges that DaimlerChrysler replaced or altered certain employees' hard drives days before Schmidt made forensic images of the drives as part of its discovery process. Further, Schmidt alleges that DaimlerChrysler attempted to hide the extent and significance of its misconduct. Schmidt now seeks to add a spoliation of evidence claim to this litigation.

## Discussion

Rule 15 of the Federal Rules of Civil Procedure governs amendments to pleadings. It allows a party to "amend its pleading once as a matter of course ... before being served with a responsive pleading ...." Fed.R.Civ.P. 15(a)(1). Otherwise, "a party may amend its pleading only with the opposing party's written consent or the court's leave. The court should freely give leave when justice so requires." *Id.* at 15(a)(2). Whether justice so requires depends on the discretion of the trial court. *Duchon v. Cajon Co.,* 791 F.2d 43, 48 (6th Cir.1986).

The court may deny a request for leave to amend if it finds "undue delay, bad faith or dilatory motive ... [or] futility of amendment." *Prater v. Ohio Educ. Ass'n,* 505 F.3d 437, 445 (6th Cir.2007) (quoting *Foman v. Davis,* 371 U.S. 178, 182, 83 S.Ct. 227, 9 L.Ed.2d 222 (1962)). Absent any of these factors, leave to amend should be "freely given." *Foman, supra,* 371 U.S. at 182, 83 S.Ct. 227. In this manner, Rule 15 stands for the proposition that

cases "should be tried on their merits rather than the technicalities of pleadings." *Moore v. Paducah,* 790 F.2d 557, 559 (6th Cir.1986) (quoting *Tefft v. Seward,* 689 F.2d 637, 639 (6th Cir.1982)). Courts in the Sixth Circuit have used Rule 15 to grant leave to add spoliation claims. *See, e.g., Morrison v. Stephenson,* 2007 WL 2401739, at *4 (S.D.Ohio 2007) (granting plaintiff's motion to amend complaint to add spoliation claim).

### 1. Futility

The Sixth Circuit has held that "[a] proposed amendment is futile if the amendment could not withstand a Fed.R.Civ.P. 12(b)(6) motion to dismiss." *Rose v. Hartford Underwriters Ins. Co.,* 203 F.3d 417, 420 (6th Cir.2000). A case cannot withstand a Fed.R.Civ.P. 12(b)(6) motion to dismiss if it "fail[s] to state a claim upon which relief can be granted." Because I am applying the Rule 12(b)(6) standard to determine futility, I "must construe the [motion] liberally in the plaintiff's favor and accept as true all factual allegations and permissible inferences therein." *Cheriee Gazette v. City of Pontiac,* 41 F.3d 1061, 1064 (6th Cir.1994). Federal courts must apply state law rules for spoliation of evidence and appropriate sanctions. *Nationwide Mut. Fire Ins. Co. v. Ford Motor Co.,* 174 F.3d 801, 804 (6th Cir.1999) ("The rules that apply to the spoiling of evidence and the range of appropriate sanctions are defined by state law; in this case, Ohio.").

■ In Ohio, the elements for a spoliation of evidence cause of action are:

1) ... pending or probable litigation involving the plaintiff; 2) knowledge on the part of the defendant that the litigation exists or is probable; 3) willful destruction of the evidence by the defendant designed to disrupt the plaintiff's case; 4) disruption of the plaintiff's case; and 5) damages proximately caused by the defendant's actions.

*Nye v. CSX Transp., Inc.,* 437 F.3d 556, 569 (6th Cir.2006) (quoting *Smith v. Howard Johnson Co.,* 67 Ohio St.3d 28, 29, 615 N.E.2d 1037 (1993)).

As applied to this case, Schmidt alleges facts that meet these requirements. Schmidt meets the first and second elements of an Ohio spoliation claim because both parties have filed pleadings in this litigation. Regarding the third and fourth elements, plaintiff alleges that Daimler-Chrylser: 1) failed to implement a litigation hold to prevent the destruction of evidence after the complaint was filed on October 4, 2004, and 2) intentionally destroyed evidence, including replacing employee hard drives. If true, this destruction might well disrupt Schmidt's case. For the fifth element, I believe that a reasonable jury might conclude that altering or replacing the hard drives was a disruption to Schmidt's case and caused damages to Schmidt.

Because Schmidt has alleged facts supporting all five elements for a claim of spoliation under Ohio law, the amendment is not futile.

### 2. Undue Prejudice

To determine whether an amendment would cause undue prejudice, the Sixth Circuit considers whether the amendment would: "require the opponent to expend significant additional resources to conduct discovery and prepare for trial; significantly delay the resolution of the dispute; or prevent the plaintiff from bringing a timely action in another jurisdiction." *Phelps v. McClellan,* 30 F.3d 658, 663 (6th Cir.1994).

Defendant does not argue that the amendment would require it to expend significant resources or prevent it from bringing a timely action in another jurisdiction. Rather, DaimlerChrysler argues that: 1) the spoliation claim is remote from the original claim; 2) the amendment will bias the jury against DaimlerChrysler; 3)

adding a spoliation claim will force DaimlerChrysler's counsel to withdraw; and 4) Schmidt unjustifiably delayed filing its motion to amend.

### A. Remoteness

■ DaimlerChrysler argues that the amendment will be unduly prejudicial because the spoliation claim is remote from the issue of whether Chrysler breached the 1994 Settlement Agreement and thereby damaged Schmidt. I disagree. The issue of spoliation of evidence is closely related to Schmidt's ability to prove breach and places only the slightest burden on DaimlerChrysler. If the jury finds that DaimlerChrysler destroyed relevant information pertaining to the breach, Schmidt may lack resources supportive of its claim that it would otherwise have had available to it.

Defendant cites cases where the relationship is much more complex. The only Sixth Circuit case defendant cites in support of this point, *Duchon v. Cajon Co.,* 791 F.2d 43 (6th Cir.1986), involved an employee's Title VII sex discrimination claim against her employer. The Sixth Circuit affirmed the trial court's denial of the plaintiff's motion to amend her complaint to include state law claims because "separate and distinct elements of proof in the Title VII and state law claims militated against exercising pendent jurisdiction." *Id.* at 47. In contrast, this case presents a situation in which the added claim points to the destruction of evidence that may have helped to prove plaintiff's primary claim.

Defendant also cites, *Wells v. Liddy,* 37 Fed.Appx. 53 (4th Cir.2002), in which the plaintiff argued that the trial court erred in denying her motion to amend her complaint. The original complaint alleged defamation and plaintiff, through her proposed amendment, sought to include allegations that defendant "engaged in a

scheme or plan that contained fraudulent activities, including fraudulent conveyances of real estate and other properties and interests" to his wife "in an attempt to protect those assets from a potential judgment against him." *Id.* at 67. Though the district court did not articulate a reason for denying the motion, the court of appeals affirmed the denial, explaining that it is within a district court's discretion to deny a motion for leave to amend if the issues raised by the amendment are remote from the issues in the complaint and would confuse the jury. *Id.* at 68 (citing 6 Charles Wright, Arthur Miller & Mary Kane, Federal Practice and Procedure § 1487 (2d ed. 1990)). The relationship between the defamation and fraud claims in *Wells* is distinct from the interrelated breach and spoliation claims in the case at bar.

### B. Jury Bias

■ Spoliation consists of the "intentional destruction of evidence that is presumed to be unfavorable to the party responsible for the destruction." *Beck v. Haik,* 377 F.3d 624, 641 (6th Cir.2004). DaimlerChrysler argues that adding Schmidt's claim for spoliation will bias the jury against it to a greater extent than "any adverse inference instruction that is often a sanction award for spoliation of evidence." [Doc. 134 at 4]. According to DaimlerChrysler, the amended claim would raise the possibility that the jury would "infer a propensity on Chrysler's part to engage in wrongful conduct, including breaching the parties' settlement agreement." [Doc. 134 at 4]. Despite this assertion, I do not see how this prejudice is distinct from any jury bias the defendant might suffer from an adverse inference instruction.

There has been, and probably will continue to be, discovery as to the destruction of evidence for the purposes of the adverse inference instruction. Any evidence developed in that regard might become known to the jury as a predicate for an adverse inference instruction. Thus, granting the amendment will not, in all likelihood, significantly increase the amount of discovery as to that issue, nor will it result in introduction of an issue that otherwise would not be before the jury. Granting Schmidt's amendment to add a spoliation claim will not result in further jury bias against DaimlerChrysler.

### C. Withdrawal of Counsel

Based on the record before me, I am not entirely convinced that DaimlerChrysler's counsel will be called on to testify as fact witnesses and, thus, forced to withdraw. Schmidt's allegations implicate DaimlerChrysler for spoliation of evidence. Specifically, Schmidt claims that DaimlerChrysler 1) was at fault for failing to implement a hold on certain data after it knew of its obligation to preserve such data in the face of litigation and 2) that DaimlerChrysler attempted to conceal its destruction of evidence from both Schmidt and the Court. At no point does Schmidt implicate counsel. Rather, it appears that defense counsel is attempting to implicate itself for the purposes of defeating Schmidt's motion to amend. As a result, I am not convinced that this amendment will implicate counsel as a participant in DaimlerChrysler's alleged destruction of evidence, requiring counsel to withdraw from the case to testify.

Even if Schmidt decides to call DaimlerChrysler's counsel as witnesses, this alone should not be grounds for denying Schmidt's motion to amend. At this point, DaimlerChrysler is speculating that Schmidt would call its counsel to testify. Mere speculation should not be grounds for overruling a motion to amend, especially given the Sixth Circuit's commitment to protect parties faced with such a situation. *See Manning v. Waring, Cox, James,*

*Sklar & Allen,* 849 F.2d 222, 224 (6th Cir.1988) ("Confronted with such a motion, courts must be sensitive to the competing public policy interests of preserving client confidences and of permitting a party to retain counsel of his choice."); *see also Reed Elsevier v. Thelaw.Net Corp.,* 197 F.Supp.2d 1025, 1027 (S.D.Ohio 2002) ("Motions for attorney disqualification should be viewed with extreme caution for they can be misused as techniques of harassment.").

### D. Unjustifiable Delay

The Sixth Circuit has repeatedly held that "[d]elay, standing alone, is an insufficient basis for denying leave to amend, and this is true no matter how long the delay." *Wallace Hardware Co. v. Abrams,* 223 F.3d 382, 409 (6th Cir.2000); *see also, e.g., Moore v. Paducah,* 790 F.2d 557, 562 (6th Cir.1986) (holding that the district court judge abused his discretion by denying a motion to amend for delay absent a showing of significant prejudice); *Hageman v. Signal L.P. Gas, Inc.,* 486 F.2d 479, 483–84 (6th Cir.1973). The longer the delay, the less prejudice the non-movant will be required to show to overcome the motion. *Phelps, supra,* 30 F.3d at 662.

DaimlerChrysler misstates the rule when it asserts that I may deny Schmidt's motion "for any *one* of several reasons," including delay. [Doc. 134 at 1] (emphasis added). Because defendant has shown no other basis for dismissing the motion to amend, there is not sufficient prejudice to allow delay to justify dismissal of Schmidt's motion to amend.

Even if delay alone sufficed to overcome a motion to amend, Schmidt would still prevail. Schmidt waited over nine months to file its motion. However, courts in the Northern District of Ohio have found that delays twice as long were not unjustifiable. The court in *GE v. Advance Stores Co.,* granted a motion to amend filed after a delay of one and a half years because it was only through discovery that the movant obtained the new information needed to support the claim. 285 F.Supp.2d 1046, 1050 (N.D.Ohio 2003) (granting plaintiff leave to plead count two of its amended complaint). Similarly, in this case Schmidt discovered the alleged spoliation long after filing the original complaint.

### Conclusion

For the foregoing reasons, it is hereby

ORDERED THAT the Schmidt's motion for leave to amend be, and the same is hereby granted.

So ordered.